1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Emily A. Horne (State Bar No. 347723)
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
          ehorne@bursor.com
          idiaz@bursor.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASINA BUTLER and BENSON PAI, on behalf of themselves and all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| BIC USA INC. | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiffs Casina Butler and Benson Pai ("Plaintiffs"), individually and on behalf of all others similarly situated, allege the following against Defendant BIC USA Inc. ("Defendant") on information and belief, except that Plaintiffs' allegations as to their own actions are based on personal knowledge.

## NATURE OF THE ACTION

1. This action seeks to recover damages and injunctive relief for Defendant's continuing failure to disclose to consumers that its shaving razors sold under the brand name "BIC" (collectively, the "Products")[1], contain per- and polyfluoroalkyl substances ("PFAS"), which are synthetic chemicals that pose undue health risks, even at low levels.

2. Laboratory studies have shown that PFAS exposure raises a host of health effects, such as various cancers, liver damage, and immunotoxicity effects.[2]  Because of the concerns presented by PFAS, consumers—like Plaintiffs—care about their presence, even if in small amounts.

3. Yet Defendant does not inform consumers of the presence of PFAS in the Products, despite its knowledge that all the Products contain PFAS.

4. Indeed, Defendant **itself recently disclosed** its intentional use of PFAS in its Products to the Maine Department of Environmental Protection, in adherence to the Maine PFAS reporting law requirements.

5. The public advocacy group, Defend Our Health, received this information under a Freedom of Access Act request for public records and thereafter assisted in publishing Defendant's disclosure of PFAS in its Products.

---

[1] The Products include, but are not limited to, all varieties of BIC Sensitive Disposable Razors, BIC EasyRinse Disposable Razors, BIC Soleil Disposable Razors, BIC Flex Disposable Razors, BIC Hybrid Comfort Disposable Razors, and BIC Comfort Disposable Razors.

[2] Nicholas J. Heckert, et al., *Characterization of Per- and Polyfluorinated Alkyl Substances Present in Commercial Anti-fog Products and Their In Vitro Adipogenic Activity*, ENVIRON. SCI. TECHNOL. 2022, 56, 1162-1173, 1162.

6.      Defendant knew or should have known that PFAS are unsafe and raise health risks because "the dangers of PFAS are well known" to the point where "public demand is leading to a growing market for PFAS-free products."[3]

7.      Based on Defendant's omission, a reasonable consumer would expect that the Products are free from PFAS.  Yet, Defendant does not notify consumers, like Plaintiffs, that the Products contain PFAS, synthetic chemicals that pose undue health risks to humans.

8.      As such, Plaintiffs seek relief in this action individually and as a class action on behalf of all purchasers of the Products.

## PARTIES

9.      Plaintiff Casina Butler is a resident of Albany, California, and a citizen of the State of California.  Plaintiff Butler purchased Defendant's BIC Soleil Click 5 Razors in January 2024 from Amazon.  Plaintiff Butler believed she was purchasing shaving razors free from PFAS, due to Defendant's failure to mention the presence of PFAS on the label.  Had Defendant disclosed on the label that the Products contained PFAS, Plaintiff Butler would have been aware of that fact and would not have purchased the Products or would have paid less for them.

10.     Plaintiff Butler continues to desire to purchase the Products from Defendant.  However, Plaintiff Butler is unable to determine if the Products are actually safe.  Plaintiff Butler understands that the composition of the Products may change over time.  But as long as Defendant continues to omit the fact that its Products contain PFAS, she will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Products and competitor's Products.  Plaintiff Butler is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Products marketed, labeled, packaged and sold disclose the material fact that the Products contain PFAS or no longer contain PFAS.. .

---

[3] Jeffrey Kluger, *Companies Knew the Dangers of PFAS 'Forever Chemicals'—and Kept Them Secret*, TIME (June 1, 2023), https://time.com/6284266/pfas-forever-chemicals-manufacturers-kept-secret/.

11.     Plaintiff Benson Pai is a resident of Union City, California, and a citizen of the State of California.  Plaintiff Pai purchased Defendant's BIC Hybrid Comfort 3 Razor in January 2024 from FoodMaxx.  Plaintiff Pai believed he was purchasing shaving razors free from PFAS, due to Defendant's failure to mention the presence of PFAS on the label.  Had Defendant disclosed on the label that the Products contained PFAS, Plaintiff Pai would have been aware of that fact and would not have purchased the Products or would have paid less for them.

12.     Plaintiff Pai continues to desire to purchase the Products from Defendant.  However, Plaintiff Pai is unable to determine if the Products are actually safe.  Plaintiff Pai understands that the composition of the Products may change over time.  But as long as Defendant continues to omit the fact that its Products contain PFAS, he will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Products and competitor's products.  Plaintiff Pai is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Products marketed, labeled, packaged and sold as safe shaving razors are, in fact, safe.

13.     Defendant BIC USA Inc. is a Delaware corporation with its headquarters in Shelton, Connecticut.  Defendant manufactures, markets, and sells shaving razors, including the Products, throughout California and the United States.  During the relevant period, Defendant controlled the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of its Products.  Defendant therefore had complete control over how to label its Products as to their contents.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed classes; (b) some members of the proposed classes have a different citizenship from Defendant; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate.  *See* 28

U.S.C. § 1332(d)(2) and (6).

15.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within the State of California, including the sale, marketing, and advertising of the Products.  Furthermore, a substantial portion of the events giving rise to Plaintiffs' claims occurred in this state.

16.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant transacts significant business within this District, Plaintiffs reside within this District, and a substantial part of the events giving rise to Plaintiffs' claims took place within this District.

### FACTS COMMON TO ALL CAUSES OF ACTION

17.     Defendant sells a variety of shaving razors, under its "BIC" brand:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16      18.     However, Defendant fails to disclose that the Products contain harmful synthetic

17  chemicals (*i.e.*, PFAS).  Specifically, Defendant has intentionally included PFAS in its Products.

18  The PFAS on razors are located on the "lubricating coatings on razor blades" that are meant to

19  "reduce friction between the blade and the skin during shaving and reduce the force required to cut

20  hair."[4]

21      19.     Scientific studies have shown that PFAS exposure raises a host of health effects in

22  humans, such as cancers, liver damage, and immunotoxicity effects.[5]

23
24
25

26  [4] Qian He, Eric Hanson & Edward Hughes, *A Close Shave: New PFAS-Free Alternatives to PTFE Surface Lubricating Coatings for Razor Blades Could Mean Great Shaving and a Better*, PCI (Aug. 7, 2023), https://www.pcimag.com/articles/111660-a-close-shave.

27

28  [5] *Id.*

20.     Indeed, PFAS are known as "forever chemicals" because they are "resistant to environmental and metabolic degradation" and "build up" in the bodies that are exposed to PFAS.[6]

21.     Because PFAS persist and bioaccumulate over time, they are harmful even at very low levels.

22.     In light of the harm PFAS cause, consumers have grown increasingly aware of and concerned by PFAS in their bodies and the products they use.  According to a recent survey, "when asked to choose the top three factors [consumers] prioritize when deciding between products, the majority of consumers surveyed said they prioritize the health/safety of products (71%) and products free of certain toxic chemicals (70%)."[7]

23.     Moreover, "[t]he majority of shoppers…are willing to spend more for a product they know is safer, with 42% willing to spend 5-15% more, 36% willing to spend 16-25% more, and 17% willing to spend 1-5% more."[8]

24.     Underscoring the gravity of the PFAS threat, on October 18, 2021, the Biden Administration announced accelerated efforts to protect Americans from PFAS, noting that they "can cause severe health problems and persist in the environment once released, posing a serious threat across rural, suburban, and urban areas."[9]  Further on April 10, 2024, the EPA announced "the first-ever national legally enforceable drinking water standard for PFAS."[10]

---

[6] *Research for Understanding PFAS Uptake and Bioaccumulation in Plant and Animals in Agricultural, Rural, and Tribal Communities Request for Applications (RFA)*, EPA (2023) 1, 2, https://www.epa.gov/system/files/documents/2023-10/fy23-star-epa-usda-pfas-rfa-october-2023-final.pdf; Phillip C. Bost, Mark J. Strynar, Jessica L. Reiner, Jerry A. Zweigenbaum, Patricia L. Secoura, Andrew B. Lindstrom & Janice A. Dye, *U.S. domestic cats as sentinels for perfluoroalkyl substances: Possible linkages with housing, obesity, and disease*, 151 ENV'T. RSCH. (2016) 145, https://doi.org/10.1016/j.envres.2016.07.027 (stating that PFAS are "resistant to biodegradation processes").

[7] *Id.*

[8] *Id.*

[9] *One-Year Wrap-Up*, THE WHITE HOUSE (Jan. 20, 2022), https://www.whitehouse.gov/ceq/news-updates/2022/01/20/one-year-wrap-up-highlights-from-the-council-on-environmental-qualitys-progress-in-tackling-the-climate-crisis-advancing-environmental-justice-conserving-and-restoring-lands-and-waters-bo/.

[10] *FACT SHEET: Biden-Harris Administration Takes Critical Action to Protect Communities from PFAS Pollution in Drinking Water*, THE WHITE HOUSE (Apr. 10, 2024), https://www.whitehouse.gov/briefing-room/statements-releases/2024/04/10/fact-sheet-biden-harris-

25.     Recent legislation echoes this concern: New York, Washington, Vermont, Connecticut, Colorado, California, Maryland, Minnesota, Rhode Island, and Hawaii have banned the intentional use of PFAS in food packaging.

26.     Maine, taking the legislation one step further, enacted a law that prohibits the sale of _any_ product with intentionally added PFAS, effective January 1, 2030.[11]

27.     Until the ban takes full effect, Maine enacted an additional law requiring that companies disclose whether their products contain intentionally added PFAS to the Maine Department of Environmental Protection.[12]

28.     Initially, companies were required to make this disclosure by January 1, 2023, however the Maine Legislature extended the reporting deadline until January 1, 2025.[13]

29.     Prior to this extension, however, "more than sixty companies submitted information … on products they sell in Maine that contain PFAS."[14]

30.     These companies included Defendant, which **itself disclosed** its **intentional** use of PFAS in the Products.

31.     "Under a Freedom of Access Act request for public records,"[15] public advocacy group Defend Our Health received and then assisted in publishing Defendant's disclosure of PFAS in the Products.[16]

---

administration-takes-critical-action-to-protect-communities-from-pfas-pollution-in-drinking-water/.

[11] _PFAS in Products_, MAINE DEP'T OF ENV'T PROT., https://www.maine.gov/dep/spills/topics/pfas/PFAS-products (Jan. 4, 2024).

[12] _PFAS in Products: Currently Unavoidable Uses_, MAINE DEP'T OF ENV'T PROT., https://www.maine.gov/dep/spills/topics/pfas/PFAS-products/cuu.html (Jan. 10, 2024).

[13] _PFAS Use Widespread in Products Sold in Maine, Industry Reports Reveal_, DEFEND OUR HEALTH, (Jan. 4, 2024), https://defendourhealth.org/news/pfas-use-widespread-in-products-sold-in-maine-industry-reports-reveal/ (last accessed Mar. 12, 2024).

[14] _Id._

[15] _Id._

[16] Lori Valigra, _New list of thousands of products with 'forever chemicals' in Maine includes BIC razors and floor finishes_, BANGOR DAILY, https://www.bangordailynews.com/2024/03/06/mainefocus/thousands-of-maine-products-pfas-bic-razors-floor-products/ (last accessed Apr. 2, 2024).

32.     Accordingly, Defendant's omission that the Products contain PFAS are itself actionable as reasonable consumers would understand that the Products do not contain PFAS due to Defendant's failure to mention the presence of PFAS.

33.     Moreover, reasonable consumers would care about the presence of PFAS in shaving razors, as consumers press the razors directly against their skin, as demonstrated in **Defendant's own marketing image** below:



34.     No reasonable consumer would expect that shaving razors would contain dangerous PFAS, which are indisputably linked to harmful health effects in humans.  Accordingly, Plaintiffs and Class Members suffered economic injuries as a result of purchasing the Products.

### FED. R. CIV. P. 9(b) ALLEGATIONS

35.     Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

36.     **WHO**: Defendant made material omissions of fact in its packaging of the Products by omitting the presence of PFAS.

37.     **WHAT**: Defendant's conduct was and continues to be fraudulent and deceptive because it has the effect of deceiving consumers into believing that the Products do not contain PFAS.  Defendant omitted from its labeling, advertisements, and marketing materials that the Products contain PFAS.  Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions.  Yet, Defendant has omitted from the Products' labeling the fact that they contain PFAS.

38.     **WHEN**: Defendant omitted from the Products' labeling the fact that the Products contain PFAS, continuously throughout the applicable relevant periods, including at the point of sale.

39.     **WHERE**: Defendant's omissions occurred in its marketing and advertising of the Products meaning the Products' labels and packaging did not contain the pertinent information about Defendant intentionally including PFAS in the Products.  The Products are sold in brick-and-mortar stores and online stores nationwide.

40.     **HOW**: Defendant omitted from the Products' labeling the fact that they contain PFAS.  And as discussed in detail throughout this Complaint, Plaintiffs and Class members read and relied on Defendant's omissions before purchasing the Products.

41.     **WHY**: Defendant omitted from the Products' labeling the fact that they contain PFAS for the express purpose of inducing Plaintiffs and Class members to purchase the Products at a substantial price premium or more than they would have paid had they known the truth about the Products.  As such, Defendant profited by selling the Products to at least thousands of consumers throughout the nation, including Plaintiffs and the Class members.

## CLASS ACTION ALLEGATIONS

42.     Plaintiffs bring this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.  The class definition(s) may depend on the information obtained throughout discovery.  Notwithstanding, at this time, Plaintiffs bring this

action and seek certification of the following proposed classes (collectively, the Classes):

> **Class**: All persons within the United States who purchased the Products from the beginning of any applicable limitations period through the date of judgment.

43.     Plaintiffs also bring this action on behalf of the following State Subclass:

> **California Subclass**: All persons who purchased the Products in the State of California from the beginning of any applicable limitations period through the date of judgment. [The Class and California Subclass are collectively referred to as the "Classes."]

44.     Excluded from the proposed Classes are Defendant, and any entities in which Defendant has a controlling interest, the Defendant's agents, employees and its legal representatives, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and all resellers of the Products.

45.     Plaintiffs reserve the right to amend the definition of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

46.     Plaintiffs further reserve the right to amend the above class definition as appropriate after further investigation and discovery, including by seeking to certify a narrower multi-state class (or classes) in lieu of a nationwide class if appropriate.

47.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  At this time, Plaintiffs do not know the exact number of members of the Classes; however, given the nature of the claims and the number of retail stores in the United States selling the Products, Plaintiffs believe that the Class members are so numerous that joinder of all members is impracticable.  While the exact number of Class members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class members.  Moreover, the number of members of the Classes may be ascertained from Defendant's books and records.  Class members may be notified of the pendency of this action by mail and/or electronic mail or other appropriate digital means, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

48.     **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  There is a well-defined community of interest in the questions

of law and fact involved in this case.  Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual Class members include:

    a.   whether the Products contain PFAS;

    b.   whether Defendant's conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

    c.   whether PFAS in the Products is material to a reasonable consumer;

    d.   whether Defendant had a duty to disclose that its Products had PFAS;

    e.   whether Plaintiffs and members of the Classes are entitled to injunctive and other equitable relief;

    f.   whether Defendant failed to disclose material facts concerning the Products;

    g.   whether Defendant's conduct was unfair and/or deceptive;

    h.   whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiffs and the Class members;

    i.   whether Defendant violated California consumer protection and deceptive practice statutes and are entitled to restitution and/or damages under such state statutes; and

    j.   whether Plaintiffs and the Class members have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

49.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of those of the Class members because Plaintiffs, like other Class members, purchased, in a typical consumer setting, the Products and Plaintiffs sustained damages from Defendant's wrongful conduct.

50.    **Adequacy – Federal Rule of Civil Procedure 23(a)(4).**  Plaintiffs will fairly and adequately protect the interests of the Class members and have retained counsel that is experienced in litigating complex class actions.  Plaintiffs have no interests which conflict with those of the Classes.

51.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).**
Absent a class action, Plaintiffs and members of the Classes will continue to suffer the harm
described herein, for which they would have no remedy.  Even if separate actions could be brought
by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and
expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and
adjudications that might be dispositive of the interests of similarly situated consumers,
substantially impeding their ability to protect their interests, while establishing incompatible
standards of conduct for Defendant.

52.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**
Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other
members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as
described below, with respect to the members of the Classes as a whole.  In particular, Plaintiffs
seek to certify the Classes to enjoin Defendant from selling or otherwise distributing the Products
until such time that Defendant can demonstrate to the Court's satisfaction that the Products are
accurately labeled.  The prerequisites to maintaining a class action for equitable relief are met as
Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby
making appropriate equitable relief with respect to the Classes as a whole.

53.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is
superior to any other available methods for the fair and efficient adjudication of the present
controversy for at least the following reasons:

      a.  The damages suffered by each individual members of the putative Classes do not
           justify the burden and expense of individual prosecution of the complex and
           extensive litigation necessitated by Defendant's conduct;

      b.  Even if individual members of the Classes had the resources to pursue individual
           litigation, it would be unduly burdensome to the courts in which the individual
           litigation would proceed;

c.  The claims presented in this case predominate over any questions of law or fact affecting individual members of the Classes;

d.  Individual joinder of all members of the Classes is impracticable;

e.  Absent a Class, Plaintiffs and members of the putative Classes will continue to suffer harm as a result of Defendant's unlawful conduct; and

f.  This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and members of the putative Classes can seek redress for the harm caused by Defendant.

g.  In the alternative, the Classes may be certified for the following reasons:

    i.  The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant;

    ii.  Adjudications of claims of the individual members of the Classes against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Classes who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class members to protect their interests; and

    iii.  Defendant has acted or refused to act on grounds generally applicable to the members of the putative Classes, thereby making appropriate final and injunctive relief with respect to the putative Classes as a whole.

## CAUSES OF ACTION

### FIRST COUNT
**California's Unfair Competition Law ("UCL")**
**Violation of California Business & Professions Code § 17200 *et seq.*,**
**Based on Fraudulent Acts and Practices**

54.  Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

55.     Plaintiffs bring this claim individually and on behalf of the California Subclass members.

56.     Under California Business & Professions Code §17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

57.     Defendant has engaged, and continues to engage, in conduct that is likely to deceive members of the public.  This conduct includes but is not limited to its failure to disclose that the Products contain PFAS.

58.     After reviewing the packaging for the Products, Plaintiffs purchased the Products in reliance on Defendant's omissions.  Plaintiffs would not have purchased the Products at all or would have paid less for them if they had known of Defendant's omissions of the fact that the Products contain PFAS.  Plaintiffs and the California Subclass members have all paid money for the Products.  However, Plaintiffs and the California Subclass members did not obtain the full value or any value of the advertised products due to Defendant's omissions regarding PFAS.  Accordingly, Plaintiffs and the California Subclass members have suffered injury in fact and lost money or property as a direct result of Defendant's omissions.

59.     By committing the acts alleged above, Defendant has engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of California Business & Professions Code §17200.

60.     In accordance with California Business & Professions Code §17203, Plaintiffs seek an order: (1) enjoining Defendant from continuing to conduct business through its fraudulent conduct; and (2) requiring Defendant to conduct a corrective advertising campaign.

61.     As a result of Defendant's conduct, Plaintiffs seek restitution, disgorgement, and injunctive relief under California Business & Professions Code §17203.

62.     Here, equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, the damages resulting from their purchase of the Product are determined to be an amount less than the premium price of the Product.  Without compensation for the full premium

price of the Product, Plaintiffs would be left without the parity in purchasing power to which they are entitled.

63.     Injunctive relief is also appropriate, and indeed necessary, to require Defendant to provide full and accurate disclosures regarding the Product so that Plaintiffs and California Subclass members can reasonably rely on Defendant's packaging as well as those of Defendant's competitors who may then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

64.     Restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price, and an injunction requiring either (1) adequate disclosures of PFAS in the Products; or (2) the removal of such PFAS from the Products, will ensure that Plaintiffs are in the same place they would have been in had Defendant's wrongful conduct not occurred, *i.e.*, in the position to make an informed decision about the purchase of the Products absent omissions with the full purchase price at their  disposal.

**SECOND COUNT**
**California's Unfair Competition Law ("UCL")**
**Violation of California Business & Professions Code § 17200 *et seq.*,**
**Based on Unlawful Acts and Practices**

65.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

66.     Plaintiffs bring this claim individually and on behalf of the California Subclass members.

67.     The violation of any law constitutes an unlawful business practice under California Business & Professions Code §17200.

68.     Defendant has violated §17200's prohibition against engaging in unlawful acts and practices by, *inter alia*, making omissions of material facts, as set forth more fully herein, and violating Cal. Civ. Code § 1750 *et seq*., and by violating the Song-Bervely Act.

69.     By violating these laws, Defendant has engaged in unlawful business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code §17200.

70.     Plaintiffs purchased the Products in reliance on Defendant's omissions as to the PFAS contained therein.  Plaintiffs would not have purchased the Products at all or would have paid less for them had they known of Defendant's omissions.  Plaintiffs and the California Subclass members paid money for the Products.  However, Plaintiffs and the California Subclass members did not obtain the full value, or any value, of the advertised products due to Defendant's omissions regarding the Products.  Accordingly, Plaintiffs and the California Subclass members have suffered injury in fact and lost money or property as a direct result of Defendant's omissions.

71.     In accordance with California Business & Professions Code §17203, Plaintiffs seek an order: (1) enjoining Defendant from continuing to conduct business through its fraudulent conduct; and (2) requiring Defendant to conduct a corrective advertising campaign.

72.     As a result of Defendant's conduct, Plaintiffs seek restitution, disgorgement, and injunctive relief under California Business & Professions Code §17203.

73.     Here, equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, the damages resulting from their purchase of the Product are determined to be an amount less than the premium price of the Product.  Without compensation for the full premium price of the Product, Plaintiffs would be left without the parity in purchasing power to which they are entitled.

74.     Injunctive relief is also appropriate, and indeed necessary, to require Defendant to provide full and accurate disclosures regarding the Product so that Plaintiffs and California Subclass members can reasonably rely on Defendant's packaging as well as those of Defendant's competitors who may then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

75.     Restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price, and an injunction requiring either (1) adequate disclosures of the existence of PFAS in the Products; or (2) the removal of such PFAS from the Products will ensure that Plaintiffs are in the same place they would have been in had Defendant's wrongful conduct not occurred, *i.e.*, in the position to make an

informed decision about the purchase of the Products absent omissions with the full purchase price at their disposal.

### THIRD COUNT
**California's Unfair Competition Law ("UCL")**
**Violation of California Business & Professions Code § 17200 *et seq.*,**
**Based on Unfair Acts and Practices**

76.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

77.     Plaintiffs bring this claim individually and on behalf of the California Subclass members.

78.     Under Business & Professions Code §17200, any business act or practice that is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

79.     Defendant has engaged, and continues to engage, in conduct which is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.  This conduct includes its failure to disclose that the Products contain PFAS.

80.     Defendant has engaged, and continues to engage, in conduct that violates the legislatively declared policies of: (1) California Civil Code §§ 1572, 1573, 1709, 1710, 1711 against committing fraud and deceit; and (2) California Civil Code § 1750 against committing acts and practices intended to deceive consumers regarding the representation of goods in certain particulars.  Defendant gained an unfair advantage over its competitors, whose labeling, advertising, and marketing for other similar products must comply with these laws.

81.     Defendant's conduct is substantially injurious to consumers.  Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have purchased the Products at all or would have paid less for them but for Defendant's omissions regarding the presence of PFAS in the Products.  Such injury is not outweighed by any countervailing benefits to consumers or competition.  Indeed, no benefit to consumers or competition results from Defendant's conduct.  Since consumers reasonably rely on Defendant's

labels, and thus also its omissions, consumers could not have reasonably avoided such injury. *Davis v. Ford Motor Credit Co*., 179 Cal. App. 4th 581, 597-98 (2009); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (outlining the third test based on the definition of "unfair" in Section 5 of the FTC Act).

82.     By committing the acts alleged above, Defendant has engaged in unfair business acts and practices which constitute unfair competition within the meaning of Business & Professions Code §17200.

83.     Plaintiffs purchased the Products based on Defendant's labels, which omitted the presence of PFAS in the Products.  Plaintiffs would not have purchased the Products at all or would have paid less for them but for Defendant failing to disclose that they contained PFAS.  Plaintiffs and the California Subclass members paid money for the Products.  However, Plaintiffs and the California Subclass members did not obtain the full value or any value of the Products due to Defendant's omissions regarding the nature of said Products.  Accordingly, Plaintiffs and the California Subclass members suffered an injury in fact and lost money or property as a direct result of Defendant's material omissions.

84.     Because Defendant's conduct is ongoing, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through its fraudulent conduct and further seek an order requiring Defendant to conduct a corrective advertising campaign in accordance with California Business & Professions Code §17203.

85.     As a result of Defendant's conduct, Plaintiffs seek restitution, disgorgement, and injunctive relief under California Business & Professions Code §17203.

86.     Here, equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, the damages resulting from their purchase of the Product are determined to be an amount less than the premium price of the Product.  Without compensation for the full premium price of the Product, Plaintiffs would be left without the parity in purchasing power to which they are entitled.

87.     Injunctive relief is also appropriate, and indeed necessary, to require Defendant to provide full and accurate disclosures regarding the Product so that Plaintiffs and Class members can reasonably rely on Defendant's packaging as well as those of Defendant's competitors who may then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

88.     Restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price, and an injunction requiring either (1) adequate disclosures of the existence of PFAS in the Products; or (2) the removal of such PFAS from the Products, will ensure that Plaintiffs are in the same place they would have been in had Defendant's wrongful conduct not occurred, *i.e.*, in the position to make an informed decision about the purchase of the Products absent omissions with the full purchase price at their disposal.

**FOURTH COUNT**
**(Violation of California's False Advertising Law, California Business & Professions Code §§ 17500, *et seq.*,)**

89.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

90.     California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

91.     As set forth herein, Plaintiffs purchased the Products based on Defendant's labels, which constituted advertising and which omitted the presence of PFAS in the Products.

92.     Plaintiffs would not have purchased the Products at all or would have paid less for them but for Defendant's failure to disclose that they contained PFAS.

93.     Plaintiffs and the California Subclass paid money for the Products.  However, they did not obtain the full value or any value of the Products due to Defendant's omissions regarding the nature of the Products.  Accordingly, Plaintiffs and the California Subclass members suffered an injury in fact and lost money or property as a direct result of Defendant's omissions.

94.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase these Products in the future and hope to rely on Defendant's marketing and packaging.

95.    Plaintiffs and members of the California Subclass are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Products.

96.    Here, equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, the damages resulting from their purchase of the Product are determined to be an amount less than the premium price of the Product.  Without compensation for the full premium price of the Product, Plaintiffs would be left without the parity in purchasing power to which they are entitled.

97.    Injunctive relief is also appropriate, and indeed necessary, to require Defendant to provide full and accurate disclosures regarding the Product so that Plaintiffs and Class members can reasonably rely on Defendant's packaging as well as those of Defendant's competitors who may then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

98.    Restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price, and an injunction requiring either (1) adequate disclosures of the existence of PFAS in the Products; or (2) the removal of such PFAS from the Products, will ensure that Plaintiffs are in the same place they would have been in had Defendant's wrongful conduct not occurred, *i.e.*, in the position to make an informed decision about the purchase of the Products absent omissions with the full purchase price at their disposal.

## FIFTH COUNT
### California's Consumer Legal Remedies Act
### Cal. Civ. Code § 1750 *et seq.* ("CLRA")

99.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

100.    Plaintiffs bring this claim individually and on behalf of the California Subclass members.

101.    Plaintiffs purchased Defendant's Products for household use.

102.    The acts and practices of Defendant as described above were intended to deceive Plaintiffs and the California Subclass members as described herein, and have resulted, and will result, in damages to Plaintiffs and members of the California Subclass.  Those actions violated, and continue to violate, the California Consumers Legal Remedies Act ("CLRA") in at least the following respects:

a.    In violation of California Civil Code §1770(a)(5) of the CLRA, Defendant's acts and practices constitute omissions that the Products have characteristics, uses, and/or benefits, which they do not;

b.    in violation of California Civil Code §1770(a)(7) of the CLRA, Defendant's acts and practices constitute omissions that the Products are of a particular quality, when they are not; and

c.    in violation of California Civil Code §1770(a)(9) of the CLRA, Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised.

103.    By committing the acts alleged above, Defendant has violated the CLRA.

104.    Plaintiffs and the California Subclass members suffered injuries caused by Defendant's omissions because they were induced to purchase the Products they would not have otherwise purchased or would have paid less for if they had known that they contained PFAS.

105.    In compliance with the provisions of California Civil Code §1782, Plaintiffs' counsel sent written notice to Defendant on March 21, 2024, informing Defendant of their intention to seek damages under California Civil Code §1750, *et seq*.  The letter stated that it was sent on behalf of all other persons similarly situated.  Accordingly, Plaintiffs seek damages from Defendant for its violations of the CLRA.  Defendant has failed to respond to or remedy the issues raised in the notice letter regarding the Products.

106.    Plaintiffs and the California Subclass members are also entitled to, pursuant to California Civil Code §1780, an order enjoining the above-described wrongful acts and practices of

Defendant, and any other relief deemed appropriate and proper by the Court under California Civil Code §1780.

107.    Here, equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, the damages resulting from their purchase of the Product are determined to be an amount less than the premium price of the Product.  Without compensation for the full premium price of the Product, Plaintiffs would be left without the parity in purchasing power to which they are entitled.

108.    Injunctive relief is also appropriate, and indeed necessary, to require Defendant to provide full and accurate disclosures regarding the Product so that Plaintiffs and Class members can reasonably rely on Defendant's packaging as well as those of Defendant's competitors who may then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

109.    Restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price, and an injunction requiring either (1) adequate disclosures of the existence of PFAS in the Products; or (2) the removal of such PFAS from the Products, will ensure that Plaintiffs are in the same place they would have been in had Defendant's wrongful conduct not occurred, *i.e.*, in the position to make an informed decision about the purchase of the Products absent omissions with the full purchase price at their disposal.

### SIXTH COUNT
**Fraud**

110.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

111.    Plaintiffs bring this claim individually and on behalf of the members of the Class and, in the alternative, the California Subclass against Defendant.

112.    As alleged herein, Defendant made material omissions to induce Plaintiffs and Class members to purchase the Products by omitting pertinent information about Defendant intentionally including PFAS in its Products.

113.    As alleged in detail herein, Defendant knew the omissions regarding the Products were material to reasonable consumers but nevertheless made such omissions on the Products' labeling.  In reliance on these omissions, Plaintiffs and Class members were induced to, and did, pay monies to purchase the Products.

114.    Had Plaintiffs and the Class members known the truth about the Products, they would not have purchased them or would have paid less for them.

115.    As a proximate result of the fraudulent conduct of Defendant, Plaintiffs and Class members paid monies to Defendant, through its regular retail sales channels, to which Defendant is not entitled, and have been damaged in an amount to be proven at trial.

## SEVENTH COUNT
### Unjust Enrichment

116.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

117.    Plaintiffs bring this claim individually and on behalf of the members of the Class and, in the alternative, the California Subclass against Defendant either together or in the alternative to the legal claims asserted above.

118.    Plaintiffs and the Class members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

119.    Defendant had an appreciation or knowledge of the benefit conferred on it by Plaintiffs and the Class members.

120.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted from its labeling, advertisements, and marketing materials that the Products contained PFAS.  That caused injuries to Plaintiffs and members of the Classes because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

121.    Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products to Plaintiffs and the Class members.

122.    Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

123.    Plaintiffs and the Class members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

124.    As a direct and proximate result of Defendant's actions, Plaintiffs and Class members have suffered in an amount to be proven at trial.

125.    Here, equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, the damages resulting from their purchase of the Product are determined to be an amount less than the premium price of the Product.  Without compensation for the full premium price of the Product, Plaintiffs would be left without the parity in purchasing power to which they are entitled.

126.    Injunctive relief is also appropriate, and indeed necessary, to require Defendant to provide full and accurate disclosures regarding the Product so that Plaintiffs and Class members can reasonably rely on Defendant's packaging as well as those of Defendant's competitors who may then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

127.    Restitution may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price will ensure that Plaintiffs are in the same place they would have been in had Defendant's wrongful conduct not occurred, *i.e.,* in the position to make an informed decision about the purchase of the Products absent omissions with the full purchase price at their disposal.

## EIGHTH COUNT
### (Negligent Failure to Warn)

128.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

129.    Plaintiffs bring this claim individually and on behalf of the Class and, in the alternative, the California Subclass.

130.    At all relevant times, Defendant was responsible for manufacturing, inspecting, distributing, labeling, advertising, and/or selling the Products and its packaging.  At all

relevant times, it was reasonably foreseeable by Defendant that the use of the Products in their intended manner involved substantial risk of injury and was unreasonably dangerous to Plaintiffs and the Class members as the ultimate users of the Products.

131.    At all relevant times, Defendant knew or had reason to know of the risk of injury and the resultant harm that the Products posed to Plaintiffs and the Class members, as the problems discussed throughout existed at the time of its manufacturing, inspection, distribution, labeling, marketing, advertising, and/or sale.

132.    Defendant as the manufacturer, tester, distributor, marketer, advertiser, and/or seller of the Products had a duty to warn Plaintiffs and the Class members of all dangers associated with the intended use of the Products.

133.    At a minimum, the duty arose for Defendant to warn consumers that the use of the Products was unreasonably dangerous.

134.    Defendant was negligent and breached its duty by negligently failing to provide warnings to consumers and users of the Products, including Plaintiffs and the Class members, regarding the true nature of the Products and their risks and potential dangers.

135.    Defendant was negligent and breached its duty of care by concealing the risks of and failing to warn consumers that the Products contain PFAS, known to cause adverse health effects in humans.

136.    Defendant knew, or through the exercise of reasonable care, should have known of the problems discussed and resulting dangers associated with consuming the Products, and knew that Plaintiffs and Class members could not reasonably be aware of those risks.  Defendant failed to exercise reasonable care in providing Plaintiffs and the Class members with adequate warnings.

137.    As a direct and proximate result of Defendant's failure to adequately warn consumers that the use of the Products, including their intended use, could cause and has caused injuries and other damages, Plaintiffs and the Class members have suffered damages, as described herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs and all members of the proposed Classes the following relief against Defendant:

a.  That the Court certify the Classes under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiffs as Class Representatives and their attorneys as Class Counsel to represent the members of the Classes;

b.  That the Court declare that Defendant's conduct violates the statutes referenced herein;

c.  That the Court preliminarily and permanently enjoin Defendant from conducting business through the unlawful, unfair, or fraudulent business acts or practices, untrue, and misleading labeling and marketing and other violations of law described in this Complaint;

d.  That the Court order preliminary and permanent injunctive relief requiring Defendant to disclose that the Products contain PFAS;

e.  That the Court order Defendant to implement whatever measures are necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

f.  That the Court order Defendant to notify each and every individual who purchased the Products of the pendency of the claims in this action to give such individuals an opportunity to obtain restitution from Defendant;

g.  For an award of compensatory damages, the amount of which is to be determined at trial;

h.  For punitive damages;

i.  That the Court grant Plaintiffs' reasonable attorneys' fees and costs of suit pursuant to California Code of Civil Procedure §1021.5, California Civil Code §1780(d), the common fund doctrine, and/or any other appropriate legal theory; and

j.  That the Court grant such other and further relief as may be just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: May 15, 2024                                    **BURSOR & FISHER, P.A.**

                                                       By:   */s/ L. Timothy Fisher*

                                                       L. Timothy Fisher (State Bar No. 191626)
                                                       Emily A. Horne (State Bar No. 347723)
                                                       Ines Diaz Villafana (State Bar No. 354099)
                                                       1990 North California Blvd., Suite 940
                                                       Walnut Creek, CA  94596
                                                       Telephone: (925) 300-4455
                                                       Facsimile:  (925) 407-2700
                                                       Email:  ltfisher@bursor.com
                                                               ehorne@bursor.com
                                                               idiaz@bursor.com

                                                       *Attorneys for Plaintiffs*

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, L. Timothy Fisher, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiffs Casina Butler and Benson Pai in this action.  Casina Butler is a resident of Albany, California. Benson Pai is a resident of Union City, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Walnut Creek, California this 15th day of May 2024.

_____*/s/ L. Timothy Fisher*_____
L. Timothy Fisher

VENUE DECLARATION