1  Trenton H. Norris (Bar No. 164781)
   Alexander Tablan (Bar No. 346309)
2  **HOGAN LOVELLS US LLP**
   4 Embarcadero Center, Suite 3500
3  San Francisco, CA 94111
   Telephone: (415) 374-2300
4  Facsimile: (415) 374-2499
   trent.norris@hoganlovells.com
5  alexander.tablan@hoganlovells.com

6  Lauren S. Colton (*Pro Hac Vice*)
   **HOGAN LOVELLS US LLP**
7  100 International Drive, Suite 2000
   Baltimore, MD 21202
8  Telephone: (410) 659-2700
   Facsimile: (410) 659-2701
9  lauren.colton@hoganlovells.com

10 *Attorneys for Defendant BIC USA INC.*

11                 UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13

14

15 CASINA BUTLER and BENSON PAI, on         Case No. 4:24-cv-02955-JST
   behalf of themselves and all others similarly
16 situated,                                Hon. Jon S. Tigar

17              Plaintiffs,                 **DEFENDANT BIC USA INC.'S
                                            NOTICE OF MOTION AND MOTION
18      v.                                  TO DISMISS PLAINTIFFS' CLASS
                                            ACTION COMPLAINT**
19 BIC USA INC.
                                            Hearing Date: October 10, 2024
20              Defendant.
                                            Time: 2:00 p.m.
21
                                            Courtroom 6 – 2nd Floor
22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT

2  PLEASE TAKE NOTICE that on October 10, 2024 at 2:00 pm, before the Honorable Jon

3 S. Tigar, Defendant BIC USA Inc. ("BIC") will and hereby does move this Court for an order

4 dismissing Plaintiffs' Class Action Complaint.

5  This Motion is based on the Memorandum of Points and Authorities, the accompanying

6 Request for Judicial Notice and its appended documents, and such oral argument and evidence as

7 the Court may consider at the hearing.

8

9 Date: August 12, 2024      **HOGAN LOVELLS US LLP**

10

11          By: */s/ Trenton H. Norris*

12           Trenton H. Norris
           Lauren S. Colton

13

14           *Attorneys for Defendant*
           *BIC USA Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

    A.      "PFAS" Versus PTFE .................................................................................2

    B.      Maine's Disclosure Law and Consumer Sentiments ..................................4

    C.      The Complaint ............................................................................................6

III.    LEGAL STANDARD .............................................................................................6

IV.     ARGUMENT ..........................................................................................................7

    A.      Plaintiffs Fail to Plead a Viable Consumer Protection Claim ...................7

        i.      Plaintiffs Do Not Plead Any Actionable Omissions Because They Fail to Allege A Duty To Disclose..............................................7

            a)      Plaintiffs fail to allege that BIC's purported omission relates to an unreasonable safety hazard......................................8

            b)      Plaintiffs fail to allege that BIC's omission is material, central to the Products' function, and meets any *LiMandri* factor..............9

        ii.     Plaintiffs' Pure Omission Claims are Not Valid under the FAL. ..............14

        iii.    Plaintiffs' "Unlawful" UCL Claim (Count II) Fails Because Plaintiffs Do Not Adequately Plead a Predicate Act. .................................14

        iv.     Plaintiffs' "Unfair" UCL Claim (Count III) Fails for Several Reasons. ........................................................................................15

            a)      The "unfair" UCL claim fails along with the "unlawful" claim. ...............................................................................15

            b)      The "unfair" UCL claim fails on the merits...................................16

    B.      Plaintiffs Fail to Satisfy Rule 9(b). ..........................................................17

    C.      Plaintiffs' Negligent Failure To Warn Claim Fails...................................20

    D.      Plaintiffs' Unjust Enrichment Claim Fails. ..............................................21

    E.      The Court Should Dismiss or Strike Plaintiffs' Nationwide Class Allegations. ...............................................................................................22

V.      CONCLUSION .....................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahern v. Apple, Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ........................................................................11, 13

*In re Apple Inc. Device Performance Litig.*,
347 F. Supp. 3d 434 (N.D. Cal. 2018) ...................................................................................10

*In re Apple Inc. Device Performance Litig.*,
386 F. Supp. 3d 1155 (N.D. Cal. 2019) ...........................................................................10, 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................................6

*Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014) .................................................................................12

*Backus v. Gen. Mills, Inc.*,
122 F. Supp. 3d 909 (N.D. Cal. 2015) .................................................................................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................................6

*Bernstein v. Virgin Am., Inc.*,
227 F. Supp. 3d 1049 (N.D. Cal. 2017), *aff'd*, 3 F.4th 1127 (9th Cir. 2021) ..........................22

*Brown v. Coty, Inc.*,
2023 WL 2691581 (S.D.N.Y. Mar. 29, 2023) .......................................................................10

*Dana v. Hershey Co.*,
180 F. Supp. 3d 652 (N.D. Cal. 2016), *aff'd*, 730 F. App'x 460 (9th Cir. 2018) ...........7, 13, 14

*Daniel v. Ford Motor Co.*,
806 F.3d 1217 (9th Cir. 2015) ..............................................................................................18

*Doe v. CVS Pharmacy, Inc.*,
982 F.3d 1204 (9th Cir. 2020) ..............................................................................................16

*Duttweiler v. Triumph Motorcycles (Am.) Ltd.*,
No. 14-cv-04809-HSG, 2015 WL 4941780 (N.D. Cal. Aug. 19, 2015) .................................21

*Edenborough v. ADT, LLC*,
No. 16-cv-02233-JST, 2016 WL 6160174 (N.D. Cal. Oct. 24, 2016) ....................................12

*Eidmann v. Walgreen Co.*,
522 F. Supp. 3d 634 (N.D. Cal. 2021) .............................................................................15, 16

*Elgindy v. AGA Serv. Co.*,
  No. 20-cv-06304-JST, 2021 WL 1176535 (N.D. Cal. Mar. 29, 2021) ...............................16, 17

*Gray v. Toyota Motor Sales*,
  No. CV 08-1690 PSG, 2012 WL 313703 (C.D. Cal. Jan. 23, 2012), *aff'd*, 554
  F. App'x 608 (9th Cir. 2014) .................................................................................................13

*Hadley v. Kellogg Sales Co*.,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ....................................................................16, 18, 19

*Hamman v. Cava Group, Inc.*,
  No. 22-cv-593-MMA, 2023 WL 3450654 (S.D. Cal. Feb. 8, 2023) .......................................13

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) .........................................................................8, 11, 14

*Harris v. LSP Prods. Group, Inc.*,
  No. 2:18-cv-02973-TLN, 2021 WL 2682045 (E.D. Cal. June 30, 2021) ...............................18

*Hayden v. Bob's Red Mill Nat. Foods, Inc.*,
  No. 23-cv-03862-HSG, 2024 WL 1643696 (N.D. Cal. Apr. 16, 2024).........................9, 11, 15

*Hedrick v. BSH Home Appliances Corp*.,
  No. 2:23-cv-04752-JWH, 2024 WL 2190984 (C.D. Cal. May 14, 2024) ...............................14

*Hodsdon v. Mars, Inc*.,
  162 F. Supp. 3d 1016 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018).............7, 8, 11, 13

*Hrapoff v. Hisamitsu Am., Inc.*,
  No. 21-cv-01943-JST, 2022 WL 2168076 (N.D. Cal. June 16, 2022) ....................................21

*Jefferson v. Healthline Media, Inc*.,
  674 F. Supp. 3d 760 (N.D. Cal. 2023) ...................................................................................21

*Kanan v. Thinx Inc.*,
  No. 20-cv-10341-JVS, 2021 WL 4464200 (C.D. Cal. June 23, 2021) ....................................20

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009).................................................................................................18

*Krakauer v. Recreational Equip., Inc.*,
  No. C22-5830 BHS, 2024 WL 1494489 (W.D. Wash. Mar. 29, 2024)............................17, 19

*Kwan v. SanMedica Int'l*,
  854 F.3d 1088 (9th Cir. 2017).................................................................................................6

*Marder v. Lopez*,
  450 F.3d 445 (9th Cir. 2006)...................................................................................................7

*Mariscal v. Graco, Inc.*,
    52 F. Supp. 3d 973 (N.D. Cal. 2014) ...................................................................20

*McCoy v. Nestle USA, Inc.*,
    173 F. Supp. 3d 954 (N.D. Cal. 2016), *aff'd*, 730 Fed. App'x. 462 (9th Cir.
    2018) ..............................................................................................................12, 14

*Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*,
    No. 14-cv-02006-JST, 2015 WL 510919 (N.D. Cal. Feb. 5, 2015)...........................21

*In re Nexus 6P Prods. Liab. Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018) ..................................................................22

*Norcia v. Samsung Telecomms. Am., LLC*,
    No. 14-cv-00582-JD, 2015 WL 4967247 (N.D. Cal. Aug. 20, 2015) ......................14

*Oxina v. Lands' End, Inc.*,
    No. 14-cv-2577-MMA, 2015 WL 4272058 (S.D. Cal. June 19, 2015) ...................22

*In re Plum Baby Food Litig.*,
    No. 4:21-cv-00913-YGR, 2024 WL 1354447 (N.D. Cal. Mar. 28, 2024)...........9, 11

*Samet v. Procter & Gamble Co.*,
    No. 5:12-cv-01891-PSG, 2013 WL 3124647 (N.D. Cal. June 18, 2013) ...............21

*Sidhu v. Bayer Healthcare Pharms. Inc.*,
    No. 22-cv-01603-BLF, 2022 WL 17170159 (N.D. Cal. Nov. 22, 2022)...............16

*Snyder v. TAMKO Bldg. Prods., Inc.*,
    No. 1:15-cv-01892-TLN, 2019 WL 4747950 (E.D. Cal. Sept. 30, 2019) ...............20

*Stickrath v. Globalstar, Inc.*,
    No. C07-1941-TEH, 2008 WL 344209 (N.D. Cal. Feb. 6, 2008)...........................12

*Sud v. Costco Wholesale Corp.*,
    229 F. Supp. 3d 1075 (N.D. Cal. 2017), *aff'd*, 731 Fed. App'x 719 (9th Cir.
    2018) ....................................................................................................................15

*Tabak v. Apple, Inc.*,
    No. 19-cv-02455-JST, 2020 WL 9066153 (N.D. Cal. Jan. 30, 2020) ...............18, 19

*In re Trader Joe's Co. Dark Chocolate Litig.*,
    No. 3:23-cv-0061-RBM, 2024 WL 1319725 (S.D. Cal. Mar. 27, 2024).........7, 9, 10

*Vincent v. PNC Mortg., Inc.*,
    No. 14-cv-00833-KJM, 2014 WL 2766116 (E.D. Cal. June 18, 2014)..................14

*Williams v. Yamaha Motor Co. Ltd.*,
    851 F.3d 1015 (9th Cir. 2017)................................................................................8

**Statutes & Other Authorities**

38 M.R.S.A. § 1614(2) ................................................................................................4, 5

California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1750 ..............................16

21 C.F.R. § 175.300(b)(3)(xxv) ......................................................................................1

21 C.F.R. §§ 870.3450 ....................................................................................................1

42 Fed. Reg. 14547 (Mar. 15, 1977) ..............................................................................1

51 Fed. Reg. 40391-92 (Nov. 6, 1986) ...........................................................................1

Fed. R. Civ. P. Rule 9(b) ......................................................................................2, 17, 18

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In this putative consumer class action, Plaintiffs Casina Butler and Benson Pai contend that they suffered economic injuries because Defendant BIC USA Inc. ("BIC") did not directly inform consumers that its disposable razor products (the "Products")[1] contain allegedly harmful per- and polyfluoroalkyl substances (known collectively as "PFAS"). Plaintiffs do not identify any law or duty requiring BIC to disclose this information to consumers. Plaintiffs also do not identify the specific type or amount of PFAS purportedly contained in BIC's Products (opting instead to broadly refer to "PFAS" throughout the Complaint), even though many of these compounds are considered safe and approved even for such sensitive applications as food packaging and medical device implants. This pure omission case is plainly ill-pled and, if successful, would impose a disclosure obligation on BIC using a standard that has never been applied to any other consumer product manufacturer.

Plaintiffs filed this suit because BIC voluntarily disclosed to Maine regulators in January 2023 that the Products contain a miniscule amount of *one* specific PFAS—polytetrafluoroethylene ("PTFE")—that is widely used throughout the razor industry (hereinafter "BIC's Maine Disclosure")[2] and that has been formally approved by the U.S. Food and Drug Administration ("FDA") since 1977 as a food contact material[3] and since 1986 in countless medical device implants.[4] BIC disclosed this information pursuant to a Maine law that at the time required manufacturers of certain products to disclose intentional PFAS use to Maine regulators. (The Maine law has since been amended to remove this obligation.) Plaintiffs have no basis to allege that the

---

[1] The Complaint (¶ 1 n.1) defines the Products to include "all varieties of BIC Sensitive Disposable Razors, BIC EasyRinse Disposable Razors, BIC Soleil Disposable Razors, BIC Flex Disposable Razors, BIC Hybrid Comfort Disposable Razors, and BIC Comfort Disposable Razors."

[2] Lori Valigra, *New list of thousands of products with 'forever chemicals' in Maine includes BIC razors and floor finishes*, Bangor Daily News (Mar. 6, 2024), available at https://shorturl.at/Keq3Y, attached as Request for Judicial Notice ("RJN") Ex. 1; Compl. ¶ 31 n.16.

[3] *See* 21 C.F.R. § 175.300(b)(3)(xxv); 42 Fed. Reg. 14547 (Mar. 15, 1977) (approving use of PTFE in food-contact surfaces like food packaging and cookware).

[4] *See, e.g.*, 21 C.F.R. §§ 870.3450 (cardiovascular prosthetics), 872.3680 (jaw implants), 874.3430 (ear prosthetics); 878.4520 (vocal cord injections); 51 Fed. Reg. 40391-92 (Nov. 6, 1986).

Products contain any "PFAS" other than the PTFE referenced in BIC's Maine Disclosure. (*See* Compl. ¶ 31 n.16). Yet they do not even allege the presence of PTFE, preferring instead to refer to the uncertain dangers encompassed by the broad term "PFAS." Plaintiffs also fail to plausibly connect their alleged economic injuries to BIC's Products.  The Complaint should be dismissed for several reasons.

*First,* Plaintiffs fail to adequately plead a consumer protection claim under California's Consumers Legal Remedies Act ("CLRA"), False Advertising Law ("FAL"), or under the fraudulent, unfair, or unlawful prongs of the Unfair Competition Law ("UCL") (Counts I-V). Plaintiffs fail to plead that BIC had a duty to disclose the presence of PTFE in the Products to consumers. This suffices to dismiss all of their consumer protection claims because they cannot allege an actionable omission absent a duty to disclose. These claims also fail because: (i) Plaintiffs cannot allege a pure omissions claim under the FAL, (ii) they fail to plead a predicate act for their "unlawful" UCL claim, and (iii) their "unfair" UCL claim is duplicative and fails on the merits.

*Second,* Plaintiffs' fraud (Count VI) and consumer protection claims fail to satisfy the heightened pleading standard of Rule 9(b) because Plaintiffs neither (i) allege that BIC intended to deceive consumers, nor (ii) plausibly connect BIC's purported omissions to their alleged injuries and demonstrate that, had the omitted information been disclosed, they would have reconsidered purchasing the Products. *Third,* Plaintiffs' negligent failure to warn claim (Count VIII) fails because Plaintiffs do not plausibly allege that BIC's Products contain a type and level of PFAS that poses a risk of harm to consumers. *Fourth,* Plaintiffs' unjust enrichment claim (Count VII) fails because it is duplicative of their failed consumer protection claims and because they fail to specify which state law governs this claim. *Fifth,* the Court should dismiss or strike the nationwide class allegations to the extent Plaintiffs assert claims of non-resident class members against BIC for conduct occurring outside of California.

## II.   BACKGROUND

### A.   "PFAS" Versus PTFE

Per- and polyfluoroalkyl substances ("PFAS") are a broad group of "more than 12,000"

different man-made compounds that are "used in thousands of products."[5] As one source cited in the Complaint explains, "PFAS were first developed in the 1940s," although "it was not until the late 1990s" that the public came to know more about these substances. (*See supra* n.5). By now, however, the ubiquity of PFAS is "well known," "turning up in all manner of previously unexpected places, including toilet paper, menstrual products, and contact lenses." *Id.* PFAS are known to be "widespread in the environment" and are "found in people, wildlife and fish all over the world."[6]

Not all PFAS are the same. Sources relied on in the Complaint concede that, while "[m]ost research to date has focused on perfluorooctanoic acid (PFOA) and perfluorooctane sulfonic acid (PFOS), which are known to be more toxic than many other studied PFAS," "more research is needed to fully understand the health risks from using [] PFAS-containing products."[7] And according to the U.S. Environmental Protection Agency ("EPA"), current research only "***suggests*** that exposure to ***certain*** PFAS ***may lead*** to adverse health outcomes," but "research is still ongoing" to evaluate the "different levels" and types of PFAS.[8] In keeping with the understanding that not all PFAS are the same or should be treated the same, the EPA recently issued a rule that "sets [different] drinking water limits for five individual PFAS," including PFOA and PFOS – but ***not*** PTFE.[9] It is therefore well known that the ***level and type of PFAS matters***. Despite all this, Plaintiffs assert that unspecified levels of still unspecified PFAS in the Products "are indisputably linked to harmful health effects in humans." (*See* Compl. ¶ 34).

BIC's Maine Disclosure identified the presence of one PFAS compound, PTFE, in the

---

[5] Jeffrey Kluger,, *Companies knew the dangers of PFAS 'forever chemicals' and kept them secret*, TIME (June 1, 2023), available at https://shorturl.at/1LuPQ, attached as RJN Ex. 2; Compl. ¶ 6 n.3.

[6] Agency for Toxic Substances and Disease Registry (ATSDR), *PFAS FAQs*, available at https://www.atsdr.cdc.gov/pfas/resources/pfas-faqs.html, attached as RJN Ex. 7.

[7] Nicholas J. Herkert, et al., *Characterization of Per- and Polyfluorinated Alkyl Substances Present in Commercial Anti-fog Products and Their In Vitro Adipogenic Activity*, 56 Env. Sci. Tech. 1162-73 (2022), attached as RJN Ex. 3; *see also* Compl. ¶ 2 n.2.

[8] U.S. EPA, *Our Current Understanding of the Human Health and Environmental Risks of PFAS*, available at https://shorturl.at/p031o, attached as RJN Ex. 8 (emphasis added).

[9] The White House, *Fact Sheet: Biden-Harris administration takes critical action to protect communities from PFAS pollution in drinking water* (Apr. 10, 2024), available at https://shorturl.at/7djrH, attached as RJN Ex. 4; *see also* Compl. ¶ 24 n.10.

Products.[10] Commonly known as Teflon®, PTFE is **one specific type** of PFAS out of the thousands of PFAS compounds identified to date. PTFE is not among the list of specific PFAS compounds about which federal government officials have expressed concern. Indeed, as Plaintiffs' own citation confirms, regulators have expressly approved the use of PTFE in certain products, such as medical devices.[11] The FDA has also approved PTFE's use in food packaging and cookware. (*See supra* nn. 3 & 4). Not surprisingly, nowhere does the Complaint (or any citation) allege that PTFE **specifically** is harmful to human health or restricted in its use. Instead, the Complaint repeatedly raises concerns of unspecified "PFAS," as though each of the approximately 12,000 compounds in this class is uniformly toxic across all possible types of exposure – a fictitious theory contradicted by scientific authorities and Plaintiffs' own citations. What's more is that a quick inspection of authorities cited in the Complaint shows that Plaintiffs rely on only two scientific journal publications – one examining how cats are exposed to PFAS, another characterizing PFAS found in anti-fog products[12] – neither of which describe PTFE.

Plaintiffs' cited sources also confirm the utility and widespread use of PTFE in razor blades in the razor industry. One source states that "PTFE-lubricating coatings date back to 1963," offering the "benefit of less force required to cut human hair." (*See* RJN Ex. 5). It further states that PTFE coatings on razor blades "**provide a smoother and more comfortable shaving experience**" and "hav[e] the greatest combination of friction reduction and durability," which explains why "**current lubricating coatings on razor blades still rely on [PTFE]**" across "**all the major manufacturers.**" *Id.* (emphasis added).

**B.   Maine's Disclosure Law and Consumer Sentiments**

As Plaintiffs correctly point out (*see* Compl. ¶ 4), BIC disclosed its use of PFAS (specifically, PTFE) in the Products to Maine's Department of Environmental Protection in January 2023 pursuant to the state's PFAS disclosure law. *See* 38 M.R.S.A. § 1614(2). This disclosure law

---

[10] *See* RJN Ex. 1; Compl. ¶ 31, n.16.

[11] Qian He, et al., *A Close Shave: New PFAS-Free Alternatives to PTFE Surface Lubricating Coatings for Razor Blades Could Mean Great Shaving*, Paint & Coatings Industry Magazine, (Aug 7, 2023) available at https://www.pcimag.com/articles/111660-a-close-shave, attached as RJN Ex. 5; *see also* Compl. ¶ 18 n.4.

[12] *See* Compl. ¶¶ 2 n.2 &  20 n.6.

required certain manufacturers to "submit to the department a written notification" that includes a description of the product (or category of products) that contains intentionally added PFAS. *Id.* In its disclosure, BIC reported that its razors contain between 3 and 30 micrograms of PTFE and that "razor blades *from all manufacturers on the market use PTFE*." *See* RJN Ex. 1 (emphasis added). To be clear, Plaintiffs do not identify—nor does there exist—any law requiring BIC to disclose *to consumers* the ingredients in its razor Products.

Although the Maine law did not require this information be made on the Product's packaging or otherwise directly to consumers, BIC's disclosure was accessible by members of the public, as demonstrated by Plaintiffs' allegations. Indeed, BIC's disclosure earned enough attention from the media to attract the interest of Plaintiffs, who cite to these reports,[13] one of which concedes that the "[p]ublic reporting of PFAS use in specific products" is already garnering consumer attention.[14] Plaintiffs' beef therefore is not that BIC failed to disclose the presence of PFAS in the Products, but that it failed to do so to consumers directly.

In alleging that "consumers have grown increasingly aware of and concerned by PFAS," the Complaint cites (¶¶ 22-23) to an undisclosed survey that purportedly showed respondents preferring products that are "safer" and "free of certain toxic chemicals." Putting aside the fact that this survey is facially unverifiable since Plaintiffs neglect to cite their source, no reasonable inference can be drawn connecting these vague and generalized consumer preferences with Plaintiffs' allegations that, had BIC disclosed on the label that the Products contained trace levels of PTFE, they "would not have purchased the Products or would have paid less for them." (*See id.* ¶¶ 9, 11). Quite critically, Plaintiffs do not allege any facts showing that cheaper alternatives exist or that comparable razors without PTFE are commercially available, much less considered acceptable by ordinary consumers. Nor could they – as their own citations would contradict them.[15]

---

[13] *See* Compl. ¶ 31 nn. 15 & 16.

[14] Defend Our Health, *PFAS use widespread in products sold in Maine, industry reports reveal* (Jan. 4, 2024) available at https://defendourhealth.org/news/pfas-use-widespread-in-products-sold-in-maine-industry-reports-reveal/, attached as RJN Ex. 6; *see also* Compl. ¶ 31 n.13.

[15] *See* Compl. ¶ 18 n.4, attached as RJN Ex. 5 ("Virtually all shaving razor blades have a PTFE-lubricating coating"); Compl. ¶ 31 n.16, attached as RJN Ex. 1 ("[R]azor blades from all manufacturers on the market use PTFE").

1

### C.     The Complaint

2      Plaintiffs allege that they purchased various BIC razors in January 2024 from third-party

3   sellers. (*Id.* ¶¶ 9, 11). Each alleges that they "believed [they] [were] purchasing shaving razors free

4   from PFAS, due to Defendant's failure to mention the presence of PFAS on the label." (*Id.*) Had

5   BIC disclosed this fact, Plaintiffs claim they "would not have purchased the Products or would

6   have paid less for them." (*Id.*) Plaintiffs purportedly continue to desire to purchase the Products,

7   but are "unable to determine if the Products are actually safe." (*Id.* ¶¶ 10, 12).

8      Throughout the Complaint, Plaintiffs allege that the Products "contain PFAS" without

9   specifying what type or level of PFAS the Products purportedly contain (*see e.g.*, ¶¶ 3, 7, 32, 34,

10   92, 104). Plaintiffs also broadly allege that "PFAS are unsafe" (*id.* ¶ 6), "pose undue health risks"

11   (*id.* ¶ 1), and are "linked to harmful health effects in humans" (*id.* ¶ 34). Yet, Plaintiffs do not allege

12   facts to show that PTFE, specifically, can cause any adverse health effects in humans, nor do they

13   allege that PTFE is harmful when used in a razor product. In fact, ***PTFE is only mentioned once***

14   ***in the Complaint***, in the title of an article found in footnote 4. (*Id.* ¶ 18, n.4).

15      Plaintiffs bring eight causes of action, all of which are based on the same alleged conduct—

16   that BIC "failed" to disclose the presence of "PFAS" to consumers. Those causes of action include:

17   a UCL claim based on "fraudulent" acts and practices (Count I), a UCL claim based on "unlawful"

18   acts and practices (Count II), a UCL claim based on "unfair" acts and practices (Count III), an FAL

19   claim (Count IV), a CLRA claim (Count V), fraud (Count VI), unjust enrichment (Count VII), and

20   negligent failure to warn (Count VIII).

21   ### III.     <u>LEGAL STANDARD</u>

22      To survive a motion to dismiss, a complaint must "contain sufficient factual matter,

23   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

24   662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court

25   must accept well-pleaded facts as true, "conclusory allegations of law and unwarranted

26   inferences . . . are insufficient to avoid dismissal." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096

27   (9th Cir. 2017) (quotations omitted); *see also Twombly*, 550 U.S. at 555 ("[L]abels and conclusions,

28   and a formulaic recitation of the elements of a cause of action will not do."). The Court also may

reject allegations that are contradicted by documentary evidence on which the complaint "necessarily relies" – i.e., "if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

## IV.   <u>ARGUMENT</u>

### A.   **Plaintiffs Fail to Plead a Viable Consumer Protection Claim**
#### i.   *Plaintiffs Do Not Plead Any Actionable Omissions Because They Fail to Allege A Duty To Disclose.*

All of Plaintiffs' consumer protection claims (Counts I-V) should be dismissed because they fail to plead an actionable omission – i.e., that BIC had a duty to disclose the presence of PTFE in the Products. *In re Trader Joe's Co. Dark Chocolate Litig*., No. 3:23-cv-0061-RBM, 2024 WL 1319725, at *7, *11 (S.D. Cal. Mar. 27, 2024) (noting that courts analyze CLRA, FAL, and UCL claims "together in omissions cases" and dismissing all three for failure to plead a duty to disclose). After all, "California courts have generally rejected a broad obligation to disclose," *Hodsdon v. Mars, Inc*., 162 F. Supp. 3d 1016, 1024 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018) (quoting *Wilson v. Hewlett-Packard Co*., 668 F.3d 1136, 1141 (9th Cir. 2012)), and approving Plaintiffs' disclosure theory here would impose an untenable obligation that is contrary to established law and public policy. *See Dana v. Hershey Co*., 180 F. Supp. 3d 652, 664-65 (N.D. Cal. 2016), *aff'd*, 730 F. App'x 460 (9th Cir. 2018) ("[S]ome bright-line limitation on a manufacturer's duty to disclose is sound policy, given the difficulty of anticipating exactly what information some customers might find material to their purchasing decisions and wish to see on product labels."). "There are countless issues that may be legitimately important to many customers, and the courts are not suited to determine which should occupy the limited surface area of a [shaving razor package]." *See id.* Requiring BIC to disclose trace PTFE in its razor Products to consumers—particularly in the absence of a law requiring such disclosure or any evidence to support that this information is important to reasonable consumers—would vastly broaden a manufacturer's duty to disclose, violate "sound policy," and set a daring precedent.

Under California law, an omission is only actionable if it is "contrary to a representation actually made by the defendant or an omission of a fact the defendant was obligated to disclose."

*Hodsdon*, 891 F.3d at 861. Because Plaintiffs do not claim that BIC made any affirmative full or partial misrepresentations—instead basing their claims *solely* on an omissions theory—they must allege that BIC was "obligated to disclose" the presence of PTFE in the Products, notwithstanding their failure to identify any law or regulation requiring such disclosure to consumers. *Id.* Specifically, Plaintiffs must allege that BIC's omission "either (1) relates to an unreasonable safety hazard *or* (2) is material, 'central to the product's function,' *and* meets one of the four *LiMandri* factors." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1086 (N.D. Cal. 2022) (quoting *Hodsdon*, 891 F.3d at 863) (emphasis added). The *LiMandri* factors are "(1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts." *Id.* at 1085.

As set forth below, Plaintiffs' meager allegations meet neither test. In fact, Plaintiffs do not plead the existence of *any* of the aforementioned factors, which alone is dispositive of their consumer protection claims.

> a)   **Plaintiffs fail to allege that BIC's purported omission relates to an unreasonable safety hazard.**

To begin, Plaintiffs fail to plead that the presence of PTFE in the Products poses an "unreasonable safety hazard" that is more than merely "conjectural and hypothetical." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1028 (9th Cir. 2017). Plaintiffs cannot plausibly allege that the PTFE in BIC's Products poses an "unreasonable safety hazard" by relying on allegations that unspecified "PFAS" pose a generalized risk of harm that is untethered to the type and amount of PFAS in the specific Products at issue. The Complaint cites a source stating that BIC's Maine Disclosure revealed the presence of *one* PFAS compound in the Products, PTFE, at levels of "3 micrograms to 30 micrograms."[16] Other than this lone reference buried in a footnote source, the Complaint does not address the type or amount of PFAS in the Products whatsoever. Instead,

---

[16] *See supra* n.2 (stating that "BIC razors contain PTFE," as reported to the Maine Department of Environmental Protection").

Plaintiffs broadly allege that the Products contain unspecified "PFAS" at unspecified levels. (*See e.g.,* Compl. ¶¶ 1, 3, 7, 9, 83). And none of Plaintiffs' allegations or cited sources states whether or how PTFE, ***specifically***—as opposed to "PFAS" generally or other, unrelated PFAS—is harmful to humans. Indeed, Plaintiffs' own sources confirm that not all PFAS are the same nor do regulatory agencies consider all PFAS to be toxic.[17] This is a blatant deviation from the pleading standard.

Notwithstanding Plaintiffs' failure to allege that PTFE is even harmful, district courts of California have held numerous times that plaintiffs must plausibly allege a threshold at which a particular chemical or contaminant poses a danger to human health in order to plead an "unreasonable safety hazard." *See Trader Joe's,* 2024 WL 1319725, at *11 ("Plaintiffs cannot just say Heavy Metals can be unhealthy and these Products contain some level of Heavy Metals. They have to connect the health risks alleged to the levels of Heavy Metals in these Products and they have to be significant enough to be unfit for human consumption or an unreasonable safety hazard."); *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, No. 23-cv-03862-HSG, 2024 WL 1643696, at *9 (N.D. Cal. Apr. 16, 2024) (holding that plaintiff did not allege cadmium posed an "unreasonable safety hazard" in the products because he failed to plead that "the level of cadmium found in the [p]roducts is liable to cause 'negative health effects in humans . . . .'"); *In re Plum Baby Food Litig.*, No. 4:21-cv-00913-YGR, 2024 WL 1354447, at *5 (N.D. Cal. Mar. 28, 2024) (holding that plaintiffs' assertion of a dangerous defect was "simply too conjectural" where they generally alleged that heavy metals can be harmful in any amount but failed to "establish that the ***amount*** of heavy metals and perchlorate in ***defendant's*** Baby Food poses an unreasonable safety hazard") (emphasis added). As in *Trader Joe's*, Plaintiffs here failed to "provide some connection between the general harms" possible from PFAS and the specific levels of PTFE in these Products. *See* 2024 WL 1319725, at *11.

### b) Plaintiffs fail to allege that BIC's omission is material, central to the Products' function, *and* meets any *LiMandri* factor.

Because Plaintiffs fail to allege an "unreasonable safety hazard," they must plead that the purported defect was material, central to the Products' function, ***and*** that one of the four *LiMandri*

---

[17] *See supra* nn. 7 & 9, attached as RJN Exs. 3-4; *see also* RJN Exs. 7-8.

factors is satisfied. *See id.* at *10. Plaintiffs' failure to adequately plead ***any one*** of those three elements is fatal to their consumer protection claims. Here, Plaintiffs fail to plead all three.

***First***, Plaintiffs cannot plead that the purported defect was "material" because there are no allegations to support that the type and amount of PFAS in the Products would be of consequence to a reasonable consumer's purchasing decision. *See In re Apple Inc. Device Performance Litig*., 386 F. Supp. 3d 1155, 1176-77 (N.D. Cal. 2019) ("A fact is 'material' if 'a reasonable consumer would deem it important in determining how to act in the transaction at issue.'"). For example, in *Brown v. Coty, Inc.*, the Southern District of New York held that plaintiff failed to plead defendant's omission about the use of PFAS in its cosmetics was materially misleading where plaintiff did "not specify which PFAS were present in [the products] or at what levels" and where the complaint— like here (*see supra* nn. 7 & 9)—acknowledged that PFAS "differ in the type and severity of harm they may produce and the level of exposure at which they are harmful." No. 22-cv-2696 (AT), 2023 WL 2691581, at *5 (S.D.N.Y. Mar. 29, 2023). Like the plaintiff in *Brown*, Plaintiffs do not even "specify which PFAS were present" or at "what levels." *Id.* None of the sources cited in the Complaint supports that PTFE—as opposed to any other "PFAS" compound—is harmful, let alone that it is harmful when used in a razor product at the levels contained in BIC's Products. Therefore, there are no allegations to support the existence of a safety concern, such that a reasonable consumer would deem the information "important" in deciding whether to purchase the Products. And Plaintiffs' conclusory allegations that they "would not have purchased the Products or would have paid less for them" (Compl. ¶¶ 9, 11) do not suffice to establish materiality. *See In re Apple Inc. Device Performance Litig*., 347 F. Supp. 3d 434, 460 (N.D. Cal. 2018) (holding that similar allegations will not overcome the materiality requirement; rather, "[p]laintiffs must plead facts sufficient to raise the plausible inference that [defendant's] disclosure of the alleged defects" would be important to a reasonable consumer's purchasing decision). That is particularly true since Plaintiffs also allege that "[v]irtually all shaving razor blades" contain PTFE,[18] making their purported decision to stop purchasing these Products a practical choice to not use razor blades at all.

---

[18] *See supra* n.11, attached as RJN Ex. 5.

DEFENDANT BIC USA INC.'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT
4:24-cv-02955-JST

**Second**, Plaintiffs fail to satisfy the "central function" prong because they "have not plausibly pled that the Products have ceased to function" as razors, *Hayden*, 2024 WL 1643696, at *10, or that the presence of PTFE in the Products "renders th[em] incapable of use by any consumer." *Hodsdon*, 891 F.3d at 864 ("[T]he central functionality of the product is not based on subjective preferences about a product."). To the contrary, Plaintiffs' own citations indicate that PTFE **helps** razors function as intended by creating a more "comfortable shave" and that all shaving razor blades on the market contain PTFE.[19] So "[e]ven if [Plaintiffs] find the presence of these trace [levels of PTFE] to be of material concern"—which no reasonable consumer would—"the [Products] continue[] to function as [razors]," and thus Plaintiffs fail to establish that BIC had a duty to disclose. *See Plum Baby Food*, 2024 WL 1354447, at *6-7 (dismissing FAL, CLRA, and UCL claims after finding that plaintiffs failed to satisfy the "central function" prong).

**Third,** the Complaint satisfies none of the *LiMandri* factors to support a duty to disclose. Plaintiffs do not and cannot allege that BIC is in a fiduciary relationship with them, and the Complaint does not identify *any* representations concerning the presence or absence of PFAS that would constitute even a "partial misrepresentation." *See Hammerling*, 615 F. Supp. 3d at 1085. Thus, Plaintiffs must adequately allege that BIC either had "exclusive knowledge of material facts not known to the [P]laintiff[s]" or that BIC "actively conceal[ed] a material fact" from them. *See id.* Plaintiffs do neither.

"[T]o sufficiently allege exclusive knowledge giving rise to a duty to disclose, plaintiffs must proffer **specific allegations** regarding the **content of information**, how defendants had access to this information, and **how plaintiffs did not have access to or could not learn this information**." *Ahern v. Apple, Inc.*, 411 F. Supp. 541, 575 (N.D. Cal. 2019) (emphasis added) (granting motion to dismiss). Here, the Complaint does not meet this pleading standard—i.e., it does not include "specific allegations" regarding the type and amount of PFAS in the Products, nor does it explain how Plaintiffs had no access or opportunity to learn this information. Rather, the Complaint makes only conclusory allegations as to Plaintiffs' lack of knowledge of PFAS in razors. *See, e.g.*, Compl.

---

[19] *See id.* (acknowledging that PTFE is considered one of the most effective razor blade coatings to reduce friction and ensure a comfortable shave).

¶ 7 ("Based on Defendant's omission, a reasonable consumer would expect that the Products are free from PFAS"); ¶ 9 ("Butler believed she was purchasing shaving razors free from PFAS, due to Defendant's failure to mention the presence of PFAS on the label."). These allegations are woefully insufficient, even under a more lenient "superior knowledge" standard. *See Edenborough v. ADT, LLC*, No. 16-cv-02233-JST, 2016 WL 6160174 (N.D. Cal. Oct. 24, 2016). Unlike *Edenborough*, where this Court held that plaintiff had sufficiently pleaded "superior knowledge" because the "specific workings and technological details of a wireless security system" were "outside the realm of knowledge of the average consumer," *id.* at *6, the fact that BIC's razors (and virtually all shaving razors on the market) contain PTFE is not an unknowable or esoteric piece of information.

In fact, the entire basis of Plaintiffs' lawsuit forecloses any possibility that BIC had "superior," let alone "exclusive" knowledge that the Products contain PFAS. For instance, Plaintiffs purportedly learned this information through BIC's Maine Disclosure—which was **publicly** accessible and then **published** online by news media—that the company, like "all [razor] manufacturers on the market[,] use[s] PTFE."[20] *See McCoy v. Nestle USA, Inc.*, 173 F. Supp. 3d 954, 967 (N.D. Cal. 2016), *aff'd*, 730 Fed. App'x. 462 (9th Cir. 2018) (finding no "exclusive knowledge"—under "*any* definition"—where defendant made "public disclosures [as] detailed in the Complaint"); *Stickrath v. Globalstar, Inc.*, No. C07-1941-TEH, 2008 WL 344209, at *4 (N.D. Cal. Feb. 6, 2008) (duty to disclose cannot be supported by "exclusive knowledge" theory where plaintiffs' allegations include disclosure by defendant "in public filing" with government agency). What's more, Plaintiffs cite another article—accessible through a simple internet search—that states, "[v]irtually all shaving razor blades have a PTFE-lubricating coating on the edges to enhance comfort while shaving."[21] *See Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1049 (N.D. Cal. 2014) (no "exclusive knowledge" where information about alleged defect was previously published in article online).

As the Southern District of California recently put it, "Plaintiffs' own allegations reveal that

---

[20] *See supra* n.2, attached as RJN Ex. 1.

[21] *See supra* n.11, attached as RJN Ex. 5.

[BIC] did not have 'exclusive knowledge' of the existence of PFAS in their Products. . . .  Plaintiffs refer to [third-party sources], which revealed [BIC's] [razors] contained PFAS. . . . [This] demonstrate[s] that the material facts alleged—the existence of PFAS in the Products' []—were not within the exclusive knowledge of Defendant but available to the public. Th[us], Plaintiffs fail to assert a duty to disclose based on exclusive knowledge of a material fact." *See Hamman v. Cava Group, Inc.*, No. 22-cv-593-MMA, 2023 WL 3450654, at *9-10 (S.D. Cal. Feb. 8, 2023) (granting motion to dismiss claims premised on fraudulent omission).

Finally, without alleging "specific affirmative acts on the part of [BIC] in hiding, concealing, or covering up the matters complained of," Plaintiffs fail to assert a duty to disclose based on active concealment. *See id.* at *10; *cf. Ahern*, 411 F. Supp. 3d at 576 n.5 ("[U]nder California law, mere nondisclosure does not constitute active concealment and generalized allegations with respect to active concealment will not do.") (alterations and quotations omitted). The Complaint's sole suggestion (¶ 135) of concealment is a fact-bereft allegation that "[BIC] was negligent . . . by concealing the risks" of PFAS. But Plaintiffs do not allege any affirmative steps BIC took to "suppress information in the public domain or obscure consumers' ability to gauge" the alleged presence of PFAS. *See Gray v. Toyota Motor Sales*, No. CV 08-1690 PSG, 2012 WL 313703, at *10 (C.D. Cal. Jan. 23, 2012), *aff'd*, 554 F. App'x 608 (9th Cir. 2014) (dismissing fraudulent concealment claim on this basis). In fact, BIC's Maine Disclosure evidences the opposite—i.e., that BIC took affirmative steps to disclose the information.

Accordingly, Plaintiffs do not plausibly allege a duty to disclose under California law, and their CLRA,[22] UCL, and FAL claims should be dismissed for failure to plead an actionable omission.

---

[22] The CLRA claim should also be dismissed since the Ninth Circuit limits the disclosure obligation under the CLRA to issues of product safety, which Plaintiffs have not alleged here. *See, e.g.*, *Dana*, 180 F. Supp. 3d at 664 ("[T]he weight of authority limits a duty to disclose under the CLRA to issues of product safety, unless disclosure is necessary to counter an affirmative misrepresentation.") (dismissing CLRA claim because plaintiff did not "allege any omission of known dangers to the safety of customers"); *Hodsdon*, 162 F. Supp. 3d at 1026, *aff'd*, 891 F.3d 857 (9th Cir. 2018) (failure to state a claim under the CLRA because "manufacturers are duty-bound to disclose only information about a product's safety risks and product defects," not "where information may persuade a consumer to make different purchasing decisions.").

1

      *ii.*      ***Plaintiffs' Pure Omission Claims are Not Valid under the FAL.***

2           Even if Plaintiffs had adequately alleged a duty to disclose (they did not), their FAL claim

3  (Count IV) nonetheless would fail because the FAL only applies to affirmative misrepresentations,

4  not omissions. Similar to the rest of their claims, Plaintiffs' FAL claim is purely omissions-based.

5  (*See* Compl. ¶¶ 91-93). But the "plain language of the [FAL] . . . does not encompass omissions."

6  *Dana*, 180 F. Supp. 3d at 668-69 (dismissing FAL claim where plaintiff failed to allege the

7  existence of any "false or misleading statement" and solely based her claims on "pure omissions");

8  *see also Norcia v. Samsung Telecomms. Am., LLC*, No. 14-cv-00582-JD, 2015 WL 4967247, at *8

9  (N.D. Cal. Aug. 20, 2015) ("There can be no FAL claim where there is no 'statement' at all.").

10  Courts in the Ninth Circuit routinely dismiss FAL claims in the absence of any allegations that the

11  defendant made an affirmative misrepresentation. *See, e.g.*, *Hedrick v. BSH Home Appliances*

12  *Corp.*, No. 2:23-cv-04752-JWH, 2024 WL 2190984, at *13 (C.D. Cal. May 14, 2024) (dismissing

13  FAL claim that was "purely based upon an alleged omission"); *Norcia*, 2015 WL 4967247 at *8

14  ("The FAL claim, to the extent based on a pure omission theory for plaintiff's benchmarking

15  allegations, is dismissed with prejudice."); *McCoy*, 173 F. Supp. 3d at 970 ("Because [plaintiff]

16  bases her claims on pure omissions . . . [she] thus fails to state a claim under the FAL.") (quotations

17  and internal citations omitted). So too here. Like the plaintiffs in *Norcia*, *Hedrick*, and *McCoy*,

18  Plaintiffs base their claims on "pure omissions" without pointing to any statement at all; as such,

19  their FAC claims likewise must fail.

20
21

      *iii.*      ***Plaintiffs' "Unlawful" UCL Claim (Count II) Fails Because Plaintiffs Do Not Adequately Plead a Predicate Act.***

22          "[T]o allege a claim under the 'unlawful' prong" of the UCL, Plaintiffs "must show a

23  violation of some independent law." *Vincent v. PNC Mortg., Inc.*, No. 14-cv-00833-KJM, 2014

24  WL 2766116, at *7 (E.D. Cal. June 18, 2014). Here, Plaintiffs rely on violations of the CLRA and

25  Song-Beverly Act as predicates for their "unlawful" UCL claim. (*See* Compl. ¶ 68). Because the

26  Complaint does not adequately plead violations of either law, Plaintiffs' "unlawful" UCL claim

27  must fail. *See Hammerling*, 615 F. Supp. 3d at 1094 ("If the predicate claims fail, the UCL claim

28  also fails.").

To the extent Plaintiffs anchor their "unlawful" UCL claim on an alleged CLRA violation, this claim must fail for the reasons described above.[23] *See Sud v. Costco Wholesale Corp*., 229 F. Supp. 3d 1075, 1088 (N.D. Cal. 2017), *aff'd*, 731 Fed. App'x 719 (9th Cir. 2018) (dismissing "unlawful" UCL claim where plaintiffs fails to adequately plead underlying CLRA violation).

Plaintiffs' "unlawful" UCL claim also fails to the extent it is premised on a violation of California's Song-Beverly Consumer Warranty Act (the "Act"). (*See* Compl. ¶ 68). Plaintiffs neglect to assert any cause of action under the Act, let alone any allegation to support an inference that BIC violated the Act. In fact, there are no breach of warranty allegations in the Complaint whatsoever. Therefore, Plaintiffs' lone reference to the Act in a single paragraph of the Complaint cannot serve as a predicate for Plaintiffs' UCL claim. *See Hayden*, 2024 WL 1643696, at *11 (dismissing unlawful UCL claim where plaintiff summarily listed predicate violations "without alleging their elements or how Defendant's conduct meets them."). Without any predicate acts, Plaintiffs' unlawful UCL claim must fail.

### iv.    Plaintiffs' "Unfair" UCL Claim (Count III) Fails for Several Reasons.

In addition to Plaintiffs' failure to allege a duty to disclose—which in and of itself is dispositive of Plaintiffs' UCL claim—Plaintiffs' claim under the "unfair" prong of the UCL fails for additional reasons. This claim should be dismissed because it overlaps with the conduct in Plaintiffs' "unlawful" UCL claim (Count II) and separately fails on the merits.

#### a)    The "unfair" UCL claim fails along with the "unlawful" claim.

"In this District, when plaintiff's claim under the unfair prong overlaps entirely with the conduct alleged in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs do not survive." *Eidmann v. Walgreen Co*., 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (alterations and quotations omitted). Here, all three of Plaintiffs' UCL causes of action (Counts I-III) are based on the same underlying conduct: BIC's failure to disclose that the Products contain PFAS. (Compl. ¶¶ 57, 59, 68, 70, 79, 82). By overlapping their third cause of action with the very same conduct that failed to support Plaintiffs' "fraudulent" and "unlawful" UCL claims (*supra* Sections IV.A.i and IV.A.iii), Plaintiffs' "unfair"

---

[23] *See supra* Section IV.A.i & n.22.

claim likewise "cannot survive." *See Eidmann*, 522 F. Supp. 3d at 647; *see also Sidhu v. Bayer Healthcare Pharms. Inc.*, No. 22-cv-01603-BLF, 2022 WL 17170159, at *9 (N.D. Cal. Nov. 22, 2022) (dismissing "unfair" UCL claim because it was "based on the same conduct underlying the other two UCL [failed] claims"); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017) (same).

### b) The "unfair" UCL claim fails on the merits.

Even if Plaintiffs' "unfair" UCL claim could survive the failure of its sister claims, it would also fail on the merits because BIC's conduct satisfies neither test that this Court applies in evaluating the "unfair" prong of the UCL. Under the "public policy" test, a party must allege that defendant's conduct is "tethered to an underlying constitutional, statutory or regulatory provision," such that the practice "offends an establish public policy." *Elgindy v. AGA Serv. Co.*, No. 20-cv-06304-JST, 2021 WL 1176535, at *10 (N.D. Cal. Mar. 29, 2021). Under the "balancing test," courts examine the practice's "impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer . . . weighing the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Id.* Plaintiffs' claim fails under both tests.

As to the "public policy test," Plaintiffs have not adequately alleged that BIC's conduct violates or offends a specific public policy. When the Ninth Circuit applied this test in *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1215 (9th Cir. 2020), it affirmed the district court's denial of the UCL unfairness claim because the plaintiffs did not explain **how** the defendant's conduct violated public policy. Similarly here, Plaintiffs allege that BIC "engaged, and continues to engage, in conduct that violates the legislatively declared policies of" California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1750 (Compl. ¶ 80), but Plaintiffs do not specifically allege **how** BIC purportedly violated any of those statutes or what the "declared policies" of those statutes purportedly are. Thus, as in *CVS Pharmacy*, because Plaintiffs "allege no facts that would support their position, and their conclusory recitation of one of the UCL's legal standards does not clarify what conduct they claim is unfair," *see* 982 F.3d at 1215, Plaintiffs fail to state a claim for "unfair" conduct under the public policy test.

Plaintiffs' "unfair" UCL claim also fails under the "balancing test," because the utility of

BIC's conduct—the use of PTFE in razor products to ensure a comfortable and effective shave—is not outweighed by the "gravity of the harm" posed to Plaintiffs in the form of purported economic injuries. *See Elgindy*, 2021 WL 1176535, at *10. The Complaint alleges no facts (such as less expensive alternatives) that would even allow the Court to undertake this inquiry. In fact, Plaintiffs appear to concede the widespread popularity and utility of coating razor products with PTFE.[24] Plaintiffs' mere assertion that BIC's undisclosed use of PTFE (which is an ***industry-wide*** practice) caused them "economic injuries" (*id.* at ¶ 34) while yielding "no benefit" (*id.* at ¶ 81) is manifestly inadequate. *Cf. Krakauer v. Recreational Equip., Inc.*, No. C22-5830 BHS, 2024 WL 1494489, at *7 (W.D. Wash. Mar. 29, 2024) (finding no economic injury where plaintiff's "bald assertion that he would have paid less or not purchased the raincoat is unaccompanied by facts showing what cheaper alternative products he might have purchased"). Contrast these bare assertions with those that this Court has found sufficient: *See, e.g.*, *Elgindy*, 2021 WL 1176535 at *10 (alleging "financial injury to consumers of being charged an additional fee, on top of the insurance premium, for a service that they do not want or need"); *Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 930 (N.D. Cal. 2015) (alleging that defendant "unfairly elect[ed] not to use [trans fat] substitutes in [a General Mills product] in order to increase profit," despite the "long list of negative health effects" from consuming trans fats, and the availability of "safe, low-cost, and commercially acceptable alternatives . . . including those used in competing brands"). In blatant contrast, Plaintiffs' bald economic injuries and "no benefit" allegations (Compl. ¶¶ 34, 81) do not rise to the level of specificity seen in *Elgindy* or *Backus.* For example, unlike *Backus*, Plaintiffs do not identify any "negative health effects" associated with the use of PTFE in the Products nor do they identify any "safe, low-cost and commercially acceptable alternatives" to the use of PTFE in razor products. *Backus*, 122 F. Supp. 3d at 930. As such, the balance of factors weighs in BIC's favor, and Plaintiffs' "unfair" UCL claim must fail.

### B. Plaintiffs Fail to Satisfy Rule 9(b).

As an initial matter, Plaintiffs' fraud claim (Count VI) is deficient because Plaintiffs do not

---

[24] *See supra* n.11, attached as RJN Ex. 5 (accepting that "all major manufacturers" of razors rely on PTFE-coatings because they "provide a smoother and more comfortable shaving experience").

allege the existence of an actionable omission. (*See supra* Section IV.A.i). Plaintiffs' fraud and consumer protection claims also fail because they do not satisfy Rule 9(b). Because the consumer protection claims are grounded in fraud, they must satisfy a heightened pleading standard. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud[,] . . . a party must state with particularity the circumstances constituting fraud."); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-27 (9th Cir. 2009) (holding that when a plaintiff "alleges a unified fraudulent course of conduct," their claims are "grounded in fraud" and the "entire complaint must therefore be pleaded with particularity"); *In re Apple Inc. Device Perf. Litig.*, 386 F. Supp. 3d at 1164 ("Consumer-protection claims [under the CLRA, FAL, and UCL] that sound in fraud are subject to the heightened pleading requirements of [Rule 9(b)]."); *Harris v. LSP Prods. Group, Inc.*, No. 2:18-cv-02973-TLN, 2021 WL 2682045, at *9 (E.D. Cal. June 30, 2021) (same). Plaintiffs' allegations fall far short of this heightened pleading standard, which in California requires allegations of "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Tabak v. Apple, Inc*., No. 19-cv-02455-JST, 2020 WL 9066153, at *8 (N.D. Cal. Jan. 30, 2020).

**First**, the Complaint lacks any particularized allegations of an "intent to defraud." The only allegations resembling such an intent are too conclusory and generalized to satisfy Plaintiffs' burden. (*See* Compl. ¶¶ 80, 102). Indeed, the majority of allegations around "intent" concern BIC's alleged "intentional use of PFAS in the Products," not BIC's purported intention to defraud consumers or induce reliance. (*Id.* ¶¶ 4, 30, 39, 112).

**Second**, Plaintiffs also fail to allege reliance because they do not plausibly connect BIC's purported omissions to their alleged injuries and demonstrate that, had the omitted information been disclosed, they would have reconsidered purchasing the Products. *See Daniel v. Ford Motor Co*., 806 F.3d 1217, 1225 (9th Cir. 2015) (requiring plaintiffs to show that the omission is material, such that they would have "behaved differently"); *cf. Hadley*, 243 F. Supp. 3d at 1099 ("[U]nder Rule 9(b), [plaintiffs] must connect the dots showing how the alleged misbranding misled [them] in a way that a reasonable consumer would be deceived."). In *Tabak*, for example, this Court rejected Apple device buyers' fraudulent omission claims because they were "couched in general allegations

of concealment" and "lack[ed] specific factual matter to raise the reasonable inference that, had Apple disclosed information about the defect, [p]laintiffs 'would have been aware of it and behaved differently.'" 2020 WL 9066153, at *9 (citation omitted).

A recent district court opinion involving an alleged nondisclosure of PFAS in raincoats is particularly instructive. In *Krakauer v. Recreational Equipment, Inc.*, No. C22-5830 BHS, 2024 WL 1494489, at *1 (W.D. Wash. March 29, 2024) ("*REI*"), the plaintiff alleged that "he would not have purchased the raincoat, or would have paid less for it, had REI adequately disclosed the presence of PFAS." The court found this to be insufficient, explaining that this "bald assertion" was "unaccompanied by facts showing what cheaper alternative products he might have purchased." *Id.* at *7. Here, Plaintiffs' allegations (Compl. ¶ 9) are similarly devoid of any specific factual detail showing that they would have—or even *could* have—acted differently by purchasing another brand's razors. Indeed, Plaintiffs' own citation confirms that "[v]irtually all shaving razor blades have a PTFE-lubricating coating."[25]

Moreover, the Complaint fails to "connect the dots" between the supposed "health risks" associated with unidentified "PFAS" (Compl. ¶ 1) and an actual risk of harm that would impact consumer choice. *See Hadley*, 243 F. Supp. 3d at 1099. Plaintiffs contend that they would not have purchased, or would have paid less for the Products had they "been aware" of the fact that the Products contain "PFAS" (Compl. ¶ 9), but they do not explain ***why*** that information matters. Baldly alleging that the entire group of PFAS compounds is "harmful" (*id.* ¶ 34) and that consumers "care about the[ir] presence" (*id.* ¶ 33) does not suffice to explain why more prominent disclosure of the PTFE in ***these specific Products*** would have impacted consumer choice. Nor does a passing reference (*id.* at ¶ 22) to an unverified survey that purportedly showed consumer interest in "safe" products free of "chemicals." (*See supra* Section II.B). As in *Tabak*, the Complaint does not raise a "reasonable inference" that disclosure of miniscule levels of PTFE in the Products' blades would have led consumers to "behave[] differently." *See* 2020 WL 9066153 at *7-9. After all, the safety of PTFE is not questioned in any of the sources cited in the Complaint, and PTFE has long been

---

[25] *See supra* n.11 (noting that "current lubricating coatings on razor blades still rely on PFAS-containing materials for all the major manufacturers").

approved by the FDA for medical devices and food-contact materials (like cookware),[26] which would pose far greater risk of exposure to the compound than a non-invasive razor product; unlike medical devices and cookware, the Products are not implanted directly into the body nor do they come into contact with food that is ingested in the body.

## C.    Plaintiffs' Negligent Failure To Warn Claim Fails.

Plaintiffs' negligent failure to warn claim (Count VIII) fails because they do not plausibly allege that BIC's Products contain a type and level of PFAS that causes a risk of harm, much less that BIC had a duty to disclose that information to consumers. A negligent failure to warn claim "requires a plaintiff to [allege] that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about." *Mariscal v. Graco, Inc*., 52 F. Supp. 3d 973, 991-92 (N.D. Cal. 2014) (citing *Anderson v. Owens-Corning Fiberglas Corp*., 53 Cal. 3d 987, 1002 (1991)). For example, in *Kanan v. Thinx Inc.*, the court dismissed plaintiffs' negligent failure to warn claim in a class action alleging that defendant's menstrual products contained PFAS and were misleadingly marketed. No. 20-cv-10341-JVS, 2021 WL 4464200, at *8 (C.D. Cal. June 23, 2021). The court reasoned that the "FDA does not require disclosure of individual ingredients" in the products, and furthermore, that the plaintiffs "failed to plead that the [products] contain short-chain PFAS of a type and at a level that poses a risk of harm." *Id.* Similarly, the Complaint here identifies no law requiring BIC to disclose a razor's individual components *to consumers*. And, as in *Kanan*, Plaintiffs fail to plead that the Products contain PFAS "of a type and at a level that poses a risk of harm," despite the fact that there are "thousands of PFAS with potentially varying effects and toxicity levels," according to the EPA.[27] As such, Plaintiffs' negligent failure to warn claim must be dismissed as similarly ill-pled.

This claim should also be dismissed as barred by the economic loss doctrine. Plaintiffs' only alleged injury is economic (*see* Compl. ¶ 34), and the economic loss rule precludes recovery for purely economic losses in a negligent failure to warn claim. *See Snyder v. TAMKO Bldg. Prods.*,

---

[26] *See supra* nn. 3 & 4.

[27] *See supra* n.8, attached as RJN Ex. 8. Even Plaintiff's citation recognizes that there are "multiple classes of PFAS," with some being "more toxic than many other[s]." Compl. ¶ 2 n.2.

*Inc.*, No. 1:15-cv-01892-TLN, 2019 WL 4747950, at *9 (E.D. Cal. Sept. 30, 2019) (holding that economic loss rule bars claim for negligent failure to warn); *Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, No. 14-cv-04809-HSG, 2015 WL 4941780, at *7 (N.D. Cal. Aug. 19, 2015) (same).

### D.    Plaintiffs' Unjust Enrichment Claim Fails.

Plaintiffs' unjust enrichment claim (Count VII) should be dismissed as duplicative of Plaintiffs' failed consumer protection claims. Plaintiffs base this cause of action on the ***same conduct***, and seek the ***same relief*** (restitution), as their consumer protection claims. *See* Compl. ¶ 120 (alleging that BIC was "unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class members' purchases of the Products," which is purportedly "inequitable" because BIC omitted the fact that "the Products contained PFAS"); ¶ 123 (seeking restitution in the form of the revenues derived from BIC's sales). Because each of Plaintiffs' other claims fails as a matter of law, there is no predicate act for their unjust enrichment claim. Courts in this District regularly dismiss claims for unjust enrichment in similar circumstances. *See, e.g.*, *Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*, No. 14-cv-02006-JST, 2015 WL 510919, at *10 (N.D. Cal. Feb. 5, 2015) (dismissing unjust enrichment claim because it "duplicates Plaintiff's other statutory and common law claims"); *Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760, 764 (N.D. Cal. 2023) (dismissing unjust enrichment claim that was "effectively tether[ed]" to a consumer protection claim); *Samet v. Procter & Gamble Co.*, No. 5:12-cv-01891-PSG, 2013 WL 3124647, at *10 (N.D. Cal. June 18, 2013) (dismissing unjust enrichment claim because the "complaint allege[d] no facts not already covered by the UCL, FAL, and CLRA claims, which already provide for restitution as a remedy"). So too here; Plaintiffs' unjust enrichment claim is likewise "effectively tether[ed]" to their consumer protection claims and fails to allege any "facts not already covered" by their deficient UCL, FAL, and CLRA claims. *Jefferson,* 674 F. Supp. 3d at 764; *Samet*, 2013 WL 3124647, at *10.

Furthermore, Plaintiffs bring their unjust enrichment claim on behalf of a nationwide Class, and in the alternative, the California Subclass (Compl. ¶ 117), but they do not allege which state law governs the claim. This is grounds for dismissal. *See Hrapoff v. Hisamitsu Am., Inc.*, No. 21-cv-01943-JST, 2022 WL 2168076, at *7 (N.D. Cal. June 16, 2022) (granting motion to dismiss

unjust enrichment claim where plaintiff failed to allege which state law governs); *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 933 (N.D. Cal. 2018) ("As this Court and other courts in this district have recognized, due to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal.") (dismissing unjust enrichment claim).

**E.      The Court Should Dismiss or Strike Plaintiffs' Nationwide Class Allegations.**

Plaintiffs improperly assert the claims of non-resident class members against BIC for conduct occurring outside of California. Plaintiffs bring their fraud (Count VI), unjust enrichment (Count VII), and negligent failure to warn claims (Count VIII) on behalf of a nationwide "Class," and in the alternative, the California Subclass. (Compl. ¶¶ 111, 117, 129). The nationwide "Class" is defined as "[a]ll persons within the United States who purchased the Products . . . ." (*Id.* ¶ 42). Plaintiffs do not allege under which state law they bring Counts VI-VIII. To the extent they allege these claims under California law on behalf of a nationwide class, these claims must be dismissed because "California law presumptively does not apply to conduct that occurs outside of California." *Bernstein v. Virgin Am., Inc.*, 227 F. Supp. 3d 1049, 1062 (N.D. Cal. 2017) (Tigar, J.), *aff'd*, 3 F.4th 1127 (9th Cir. 2021). In order to avoid this presumption against extraterritoriality, Plaintiffs must plead that the "alleged wrongful conduct occurred in California." *Id.* at 1063. Yet, there are no allegations linking the purchases of the nationwide class members, who purportedly purchased the Products throughout the United States, to California. Nor are there allegations linking BIC's conduct to California. Plaintiffs acknowledge that BIC is a Delaware corporation with its headquarters in Shelton, Connecticut (Compl. ¶ 13) but fail to contend that BIC's alleged conduct arose in California. The mere fact that BIC "manufactures, markets, and sells shaving razors, including the Products, throughout California and the United States" (*id.*) does not justify subjecting BIC to the burden of defending a nationwide class action in California based on claims that have nothing to do with California.

Therefore, Plaintiffs' attempted assertion of claims, purportedly under California law, on behalf of non-California residents is improper. *See, e.g.*, *Oxina v. Lands' End, Inc.*, No. 14-cv-2577-MMA, 2015 WL 4272058, at * 10 (S.D. Cal. June 19, 2015) (dismissing nationwide class claims "because Plaintiff does not allege that the misconduct suffered by the nationwide class

occurred inside California, or that Defendant's headquarters or principal place of operations are inside California").

## V.   <u>CONCLUSION</u>

For the reasons discussed above, the Court should dismiss the Complaint in its entirety.

Date: August 12, 2024                                    **HOGAN LOVELLS US LLP**

By: */s/ Trenton H. Norris* _____
      Trenton H. Norris
      Lauren S. Colton

      *Attorneys for Defendant*
      *BIC USA Inc.*